Robert STARGARD, Plaintiff–
Appellant,

v.

BANC ONE CORPORATION,
Defendant–Appellee.

No. 00–4105.

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 2001.

Decided July 9, 2001.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

### ORDER

Robert Stargard sued his former employer, Banc One Corporation, claiming that it illegally terminated him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The district court granted summary judgment in favor of Banc One after determining that Stargard failed to establish a prima facie case of age discrimination, nor could he show that Banc One's stated reason for his termination was pretextual. We affirm.

Born in September 1937, Stargard was 59 years old when Banc One terminated him in February 1997. He began working for Banc One as a file clerk in 1955 and worked his way up in the company, serving as proof machine operator, teller, cashier, and assistant vice president. Stargard eventually rose to the position of branch manager of Banc One's Watertown, Wisconsin branch. When that branch merged with a branch located in Beaver Dam, Wisconsin in 1991, Stargard became a commercial lender, working in the Watertown facility but reporting to Richard Laihinen, President of the Beaver Dam office.[1]

As his supervisor, President Laihinen evaluated Stargard's performance annually for the years 1991–1993. In each of those evaluations, Laihinen gave Stargard a ranking of "Some Performance Improvement Needed," the second lowest ranking out of the five possible rankings. Laihinen noted that Stargard often failed to follow the proscribed company procedures for producing complete client files. Because Laihinen could not monitor Stargard's daily work habits, Laihinen hired Thomas Spitz, who was in his mid-thirties, to serve as branch manager of the Watertown office. In that position, Spitz developed first-hand knowledge of Stargard's job performance and therefore took over the responsibility of preparing Stargard's annual evaluations.

In a January 1995 evaluation of Stargard, Spitz suggested that Stargard's performance needed improvement. Spitz noted that Stargard struggled to meet his deadlines and needed to improve his time management skills overall. In addition to preparing this evaluation, Spitz also issued Stargard a written disciplinary warning, known as a "Correct and Assist Performance Discussion Memorandum" (C&A). The issuance of the first C&A in January 1995 was sparked by the departure of one of Banc One's largest clients. When the client contacted Stargard to inform him of its decision to do its banking elsewhere, Stargard telephoned Laihinen to report this development. Banc One policy, however, dictated that Stargard report such significant client changes to his immediate supervisor, Spitz. Moreover, Stargard did not report the loss of the client to Spitz until Spitz approached Stargard to discuss another matter involving this same client. The January 1995 C&A also referred to Stargard's inability to complete his work by the assigned due dates and his failure to timely present the necessary paperwork

---

1. Although the two branches merged and are sometimes collectively referred to in the record as the "Beaver Dam branch," Stargard worked out of the Watertown office that Banc One continued to maintain. President Laihinen's office was located in the Beaver Dam office.

for each loan or to be familiar with financial statements sent directly to the Beaver Dam office. Spitz decided to arrange monthly progress meetings with Stargard so that Spitz could monitor Stargard's performance more closely. Despite these performance concerns, Stargard received a pay raise in April 1995.

Spitz issued Stargard a second C&A in September 1995, which discussed two incidents in which Stargard failed to execute the necessary paperwork to secure collateral prior to the closing of two loans. This C&A also expressed concerns about Stargard's continuing failure to provide complete loan files on each client to the credit department. As part of the monthly progress meetings, Spitz now required Stargard to prepare memoranda detailing his progress in ensuring the timely receipt of financial statements.

Spitz issued Stargard a third C&A memo in August 1996 for unacceptable job performance. Spitz cited Stargard's repeated missed deadlines and his failure to file timely receipt of financial statements. Spitz again asked Stargard to provide memoranda to document his progress in creating complete files and warned him that "unsatisfactory progress in improving and maintaining performance in the areas sighted [sic] will result in termination of your employment." In October 1996 Spitz wrote an addendum to the third C&A to reprimand Stargard for asking another supervisor to authorize a lower loan rate for a client after Spitz had declined authorization. In that addendum, Spitz prohibited Stargard from referring loan business to other areas of the bank without Spitz's explicit instructions.

In late 1996 President Laihinen retired, and David Heying took over as bank president. Shortly thereafter, in February 1997, Spitz issued a memo to President Heying recommending that Stargard be terminated. Spitz reported that since the

August 1996 C&A, Stargard violated company policy on three occasions by failing to document significant changes in client relationships, failing to meet assigned deadlines, and attempting to refer a loan customer to another lender without prior authorization. Upon Spitz's recommendation, President Heying terminated Stargard's employment on February 20, 1997.

In his complaint, Stargard alleged that Banc One terminated him because of his age and replaced him with a younger employee. The district court determined, however, that Stargard could not establish a prima facie case of age discrimination because he could not show that he was meeting Banc One's legitimate expectations when he was terminated. Even if Stargard could establish the prima facie case, the district court concluded, he had not established a genuine issue of fact as to whether the reason for his termination was pretextual. The district court thus entered summary judgment in favor of Banc One.

Stargard first argues that summary judgment was inappropriate because a reasonable trier of fact could conclude that he had set forth a prima facie case of discrimination. We review the grant of summary judgment de novo and draw all inferences in favor of Stargard. *See Heinemeier v. Chemetco, Inc.,* 246 F.3d 1078, 1082 (7th Cir.2001). In order to present a prima facie case of age discrimination, Stargard must establish that 1) he was in the protected age group of 40 years or older; 2) he was performing his job within the legitimate expectations of his employer; 3) he was discharged; and 4) a substantially younger employee replaced him. *See Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 746 (7th Cir.1999). The parties do not contest that Stargard met the first and third elements. Regarding the fourth element, Banc One argues that Stargard

failed to establish that a substantially younger employee replaced him. But Banc One's answer states that it "admits that plaintiff's position as a relationship lender was filled by a younger employee." Thus, the only disputed element is whether Stargard met Banc One's legitimate performance expectations.

■ Stargard contends that Banc One defined its expectations by rewarding him with pay raises up until 1995. His performance must have been sufficient before April 1995, he maintains, because he received a pay raise each year from 1991–1995. This argument falls short, however, because it does nothing to explain the decline in his performance that was well-documented in the September 1995 and August 1996 C&As, both of which were issued after his last pay raise and both of which noted that his performance was far below what the company expected of him. Moreover, Stargard's previous pay raise in April 1995 is not proof that he was meeting his employer's legitimate expectations when he was terminated in February 1997. *See Cengr v. Fusibond Piping Sys.*, 135 F.3d 445, 452–53 (7th Cir.1998).

■ In addition, Stargard argues that the performance problems documented by Spitz were false. To support this contention, he relies on the testimony of two credit analysts who testified that Stargard's performance was equal to that of the other commercial lenders who had not been fired. According to Stargard, this testimony demonstrates that he *"was* meeting the Bank's expectations in that regard." We will not determine, however, whether an employer's legitimate expectations are "too much" for an employee to realistically achieve, but only whether the performance expectations are made in "good faith, without fraud or deceit." *See Contreras v. Suncast Corp.*, 237 F.3d 756, 760 (7th Cir.2001) (quoting *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir.

2000)). In this respect, Stargard has not established that Spitz's demands–that Stargard complete his assignments accurately and on–time–were not made in good faith and indeed, Spitz's expectations seem to be entirely reasonable. Moreover, the credit analysts' testimony does not clearly specify the backgrounds of the other lenders with whom Stargard is being compared, and thus it is difficult to determine whether these lenders shared job responsibilities similar to Stargard's.

Moreover, other evidence in the record suggests that Stargard failed to meet his employer's expectations. *See Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 844 (7th Cir.1996) (examining record as a whole to discredit notion employee was meeting legitimate expectations of employer). For example, the record includes several requests from the credit department for Stargard to provide missing or late paperwork and information, such as real estate evaluations and tax returns. Furthermore, in every evaluation since 1991 Stargard received the same overall ranking, "Some Performance Improvement Needed," which reflects a longstanding consensus that Stargard's performance fell below the acceptable standard. In light of this record, the district court correctly determined that there is no genuine issue of fact that Stargard was not meeting the legitimate expectations of his employer. The judgment of the district court can therefore be affirmed on this basis. *See Mills*, 83 F.3d at 844.

■ Even if we were to assume that Stargard could make out a prima facie case, he would still have to establish that the proffered reason for his termination–poor job performance–was pretextual. Stargard contends that pretext can be proven by Banc One's failure to produce evidence that perfect timeliness and perfect file records were required of all loan officers. This argument is confusing, how-

ever, because Spitz did not criticize Stargard only for missing one or two reports, which would suggest that Banc One required absolute perfection in filing reports, but rather for his well-documented pattern of failing to complete the necessary paperwork on time. In any event, Stargard bears the burden of producing evidence of pretext, *see Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir.2000), and his erroneous suggestion that perfection was required does not establish that Banc One's reason for terminating him was dishonest, *see O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir.2001) (requiring employee to establish that the employer's reason for termination was "a lie" to show reason was pretextual).

Next, Stargard argues that pretext can be inferred from the fact that he was never apprised of Spitz's concerns about his job performance. According to Stargard, unless there was pretext, an employer "would not terminate its employee of 37+ years without giving him a chance to defend against allegations of which he had no knowledge." Stargard's argument, however, overlooks the fact that all three C&As specifically outlined Spitz's concerns about Stargard's job performance. In addition, Stargard attended mandatory monthly meetings with Spitz to review his performance. Any argument that Stargard was unaware that his performance needed improvement is therefore unconvincing. Moreover, the fact that Stargard was a longtime employee does not suggest that President Heying did not honestly believe that Stargard's performance was poor when he made the decision to terminate Stargard.

█ Finally, Stargard suggests that Banc One's given reason for his termination is pretextual because Spitz orchestrated the termination by issuing false C&As regarding Stargard's performance. After "concoct[ing]" these documents, he

argues, Spitz's recommendation to terminate Stargard was "blessed" by Spitz's supervisors. But an employee cannot establish pretext merely by proving that the accusations against him are fabricated. *See Wade v. Lerner New York*, 243 F.3d 319, 323 (7th Cir.2001). Instead, he must establish that the decisionmakers did not honestly believe they were terminating him because of his sub-par job performance. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir.2001). This he has failed to do. Stargard offers no evidence–other than his conclusory statements that Spitz was lying–to suggest that President Heying did not honestly believe he was terminating Stargard for his poor performance. And as discussed above, the record is replete with evidence that Stargard consistently had difficulty meeting his employer's performance expectations.

AFFIRMED.