[Cite as *Morrissette v. DFS Servs., L.L.C.*, 2013-Ohio-4336.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Julien R. Morrissette, | : | |
| Plaintiff-Appellant, | : | No. 12AP-611 |
| | | (C.P.C. No. 09CVC-10-16281) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| DFS Services, LLC et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 30, 2013

Eugene L. Matan LLC, and Eugene L. Matan, for appellant.

*Ulmer & Berne LLP, William D. Edwards*, and *Paul R. Harris*, for appellees.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Julien R. Morrissette, from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, DFS Services, LLC ("DFS"), and Vicki Stokes.

{¶ 2} Appellant was hired by DFS in 1988 as a collection specialist in the company's recovery department. DFS requires that its employees review and agree to abide by the company's Code of Conduct. Tracey Davis was hired by DFS in 2007 to work as a senior collection specialist, and her office work area was in close proximity to appellant's work area.

{¶ 3} On June 26, 2008, DFS received a letter from Rayl Stepter, an attorney representing Davis, in which Stepter alleged that "[s]ince February 2008 [Davis] has been

racially harassed by co-worker, Juli[e]n Morris[s]ette." It was alleged that the harassment included appellant making "racial remarks" to Davis, as well as hanging a noose in his work area in plain view of Davis and making statements about the noose involving the "KKK" and "Emmett Till."

{¶ 4} On June 27, 2008, appellee Vicki Stokes (individually "Stokes"), a human resources manager with DFS, informed appellant that he was being placed on paid administrative leave pending the outcome of an investigation. On that date, Stokes asked appellant if he wanted any personal items from his desk brought to the personnel area. Appellant remarked that he wanted his briefcase, a thermos bottle and his "gun."

{¶ 5} DFS subsequently conducted an investigation regarding the claims made by Davis. During the investigation, appellant was questioned about a noose he had placed in his work area. On August 1, 2008, DFS made a decision to terminate appellant from his employment with DFS. In a memorandum prepared by Larry Lowry, a DFS department manager, Lowry recommended terminating appellant on the following grounds:

> In accordance with Company policy, Mr. Morrissette was placed on a paid administrative leave pending the investigation. Before placing Mr. Morrissette on leave, he was asked if he needed any personal items from his work area. In front of his manager and the Human Resources manager, Mr. Morrissette inappropriately responded that he needed his "briefcase, coffee cup, glasses and my **gun (*laughing*)**." In making this comment, Mr. Morrissette demonstrated a clear lack of judgment and an inability to distinguish between inappropriate and appropriate conduct in the work place. This is a violation of the Company's Code of Conduct.
>
> During the investigation, Mr. Morrissette admitted that he regularly initiated inappropriate conversations about race, religion and politics in the workplace. This is a violation of the Company's Code of Conduct.
>
> During the investigation it was revealed that Mr. Morrissette displayed a small rope tied like a "noose" in his cubicle. This is a violation of the Company's Code of Conduct.

(Emphasis sic.)

{¶ 6}    In November 2008, appellant filed a complaint against DFS, alleging claims for age discrimination, breach of contract, promissory estoppel, and wrongful termination in violation of public policy.  In February 2009, the trial court dismissed, by agreed order, the claim for termination of employment in violation of public policy.  On September 30, 2009, DFS filed a motion for summary judgment.  On October 8, 2009, appellant voluntarily dismissed the complaint without prejudice pursuant to Civ.R. 41(A)(1)(a).

{¶ 7}    On October 30, 2009, appellant re-filed the complaint against DFS, adding Stokes as a defendant.  In the complaint, appellant alleged that DFS had wrongfully accused him of using racially derogatory and improper language toward an African-American co-worker.  It was further alleged that Stokes, the human resources manager for DFS and an African-American, unlawfully considered appellant's race (Caucasian) in deciding to terminate his employment.  The complaint, which alleged that appellant was age 56 at the time of his termination, asserted causes of action for age discrimination and reverse race discrimination.

{¶ 8}    On December 23, 2009, DFS and Stokes (collectively "appellees") filed a motion to dismiss pursuant to Civ.R. 12(B)(6).  On January 11, 2010, appellant filed a memorandum contra the motion to dismiss.  By decision and entry filed June 10, 2010, the trial court granted appellees' motion to dismiss.

{¶ 9}    Appellant filed a notice of appeal from the trial court's entry of dismissal.  In *Morrissette v. DFS Servs., LLC,* 10th Dist. No. 10AP-633, 2011-Ohio-2369, this court affirmed in part and reversed in part the judgment of the trial court.  Specifically, this court held that appellant alleged sufficient facts to put appellees on notice that he was asserting an age discrimination case, and thus the trial court erred in dismissing his age discrimination claim.  However, this court concluded that appellant failed to plead sufficient operative facts to put appellees on notice that he was bringing a reverse race discrimination claim.

{¶ 10} Following remand, appellees filed a motion for summary judgment on May 7, 2012. Appellant filed a memorandum in opposition to appellees' motion for summary judgment on May 29, 2012.  By decision filed June 12, 2012, the trial court granted appellees' motion for summary judgment.  The decision of the trial court was journalized by judgment entry filed July 11, 2012.

{¶ 11} On appeal, appellant sets forth the following three assignments of error for this court's review:

ASSIGNMENT OF ERROR NO. I:

The Trial Court erred in granting Appellees['] Motion for Summary Judgment on Appellant's claim of age discrimination by construing the evidence in favor of Appellee[s].

ASSIGNMENT OF ERROR NO. II:

The Trial Court erred by holding that Appellant did not make a *prima facie* showing for his age discrimination claim.

ASSIGNMENT OF ERROR NO. III:

The Trial Court erred as a matter of law when it failed to consider all pleadings and court filings including the numerous depositions taken when granting DFS' Motion for Summary Judgment.

{¶ 12} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant contends the trial court erred in: (1) construing the evidence in favor of appellees, (2) holding that appellant failed to make a prima facie showing of age discrimination, and (3) failing to consider all pleadings and court filings in granting summary judgment in favor of appellees.

{¶ 13} Pursuant to Civ.R. 56(C), summary judgment shall be granted if the filings in the action, including the pleadings and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This court's review of a trial court's decision granting summary judgment is de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

{¶ 14} R.C. 4112.02(A) states in part: "It shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." In general, "Ohio courts examine state

employment discrimination claims under federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000." *Knepper v. Ohio State Univ.,* 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 10, citing *Coryell v. Bank One Trust Co. N.A.,* 101 Ohio St.3d 175, 2004-Ohio-723.

{¶ 15} The evidence before the trial court on the motion for summary judgment included the deposition testimony of appellant, Stokes, Davis, Lowry, and DFS personnel Vianne Gossett and Michael Daverio, as well as affidavits of several individuals, including those of appellant and Stokes. The following facts are taken from the above materials.

{¶ 16} In June 2008, DFS received a letter from an attorney representing DFS employee Davis, alleging that Davis had been "racially harassed" by appellant at work. Specifically, the letter stated in part:

> Since February 2008, she has been racially harassed by co-worker, Juli[e]n Morris[s]ette. Mr. Morris[s]ette repeatedly makes racial remarks to my client. Most notably, Mr. Morris[s]ette took it upon himself to place a hangman's noose in his work area in plain view of Ms. Davis. He often makes statements about the noose such as calling it a "necklace for Mr. Till" (referring to Emmett Till, the young man who was brutally beaten by racists in the South during the Jim Crow era), and that the "KKK are going to hang Mr. Obama out to dry" (referring to African American Presidential candidate Barack Obama).
>
> Ms. Davis has reported this harassment several times to supervisors and to Human Resources, yet the noose continues to be present and the remarks continue. * * * My client has been severely distraught about the harassment and the Company's failure to take action. She is presently suffering from panic attacks.

{¶ 17} Following receipt of the letter, DFS conducted an investigation. Stokes, a human resources manager, was involved in the investigation. On the date the letter was received by DFS personnel, Stokes walked to appellant's work station and "discovered a Hangman's Noose pinned to the wall of his cubicle." (Stokes Affidavit, ¶ 6.) Stokes "immediately removed the Hangman's Noose" from appellant's work area. (Stokes Affidavit, ¶ 7.)

{¶ 18} The following day, appellant was brought to Stokes' office.  At that time, Stokes informed appellant "that a complaint had been made against him and that he was being placed on paid administrative leave pending the outcome of the investigation." (Stokes Affidavit, ¶ 8.)  Stokes asked appellant whether there were any personal items from his desk that he wanted retrieved before being escorted from the premises. Appellant responded that he wanted his briefcase, coffee cup, glasses and "my gun." (Stokes Affidavit, ¶ 10.)

{¶ 19} Later that day, Stokes telephoned appellant and questioned him about the noose.  Appellant responded that he knew about the noose and that it was "displayed in plain view in his work area."  (Stokes Affidavit, ¶ 13.)  According to appellant, the noose had been made by a co-worker, Michael Gosheff, and had been displayed in appellant's work cubicle for about three or four months.  Appellant told Stokes "he really did not remember what the noose was about."  (Stokes Affidavit, ¶ 14.)

{¶ 20} Several days later, on June 30, 2008, appellant told Stokes during a telephone conversation that, after watching the movie "Hang'em High" over the weekend, he remembered that "the noose was related to the Compliance Team and how they hang them high."  (Stokes Affidavit, ¶ 23.)  Throughout the course of her investigation, Stokes received "several different explanations regarding the use of the noose."  (Stokes Affidavit, ¶ 27.)  In her deposition, Stokes testified that appellant "admitted that he regularly initiated inappropriate conversations about race, religion, and politics in the workplace." (Stokes Depo., 43.)  With respect to issues of race, appellant "spoke about the KKK and Emmet[t] Till."  (Stokes Depo., 46.)

{¶ 21} Davis began her employment with DFS in December 2007 as a senior collection specialist, and she voluntarily resigned from DFS in September 2008.  Davis testified that the noose on display at appellant's work station was in her "direct view every day."  (Davis Depo., 26.)  According to Davis, appellant regularly referred to her as "Sunshine."  (Davis Depo., 64.)  In February 2008, Davis told appellant not to call her that name, indicating that Sunshine "was a slave name" and that it was "not appropriate." (Davis Depo., 65.)  Shortly after this conversation, Davis noticed a hangman's noose in appellant's work cubicle.  Davis asked appellant about the noose, and he responded that "[i]t was a necklace worn by Emmett Till."  (Davis Depo., 69.)  Davis requested that

appellant remove the noose, and appellant responded: "I don't tell you how to wear your hair now, do I, Sunshine.  This is America and freedom of speech is my right, okay." (Davis Depo., 70.)

{¶ 22} Davis testified that appellant engaged in work place conversations "about religion, race, politics [and] about my hair."  (Davis Depo., 73.)  In March 2008, Davis had a meeting with Larry Lowry, the department manager.  Davis told Lowry about the hangman's noose and "some of the comments, the nicknames."  (Davis Depo., 109.)  Davis related to Lowry that she wanted the noose "down.  It was offensive, * * * it was bothering me.  I'm having anxiety attacks and * * * I can't sleep, can't eat."  (Davis Depo., 109.)

{¶ 23} On June 19, 2008, appellant made a comment to Davis about then presidential candidate Barack Obama in the context of Hillary Clinton dropping out of the presidential primary.  Specifically, appellant remarked: "That boy is fooling America. That boy won't get my vote.  But no bother asking you, blacks will vote for blacks, and that's just the way it is, Sunshine.  Racism is alive and well in America.  I really like that boy but the KKK will never let him become president.  They'll hang him to dry."  (Davis Depo., 172.)  Appellant then tugged on the noose in his cubicle.

{¶ 24} Davis testified that she left her employment with DFS "[b]ecause of the racial harassment, because of [appellant]."  (Davis Depo., 179.)  Davis did not want to leave her job, but she "left because that's the only way that I could walk away."  (Davis Depo., 179.)  Davis stated that she still suffers from panic attacks.

{¶ 25} Appellant, who began working at DFS in 1988, testified in his deposition that he could not recall any ageist comments made to him at work near the time of his termination.  Appellant identified Michael Gosheff as an individual under the age of 40 who received preferential treatment, citing the fact that Gosheff was the individual who initially provided him with the noose.

{¶ 26} At work, appellant "would say, 'Good morning sunshine' " to Davis, who was situated near appellant's work area.  (Appellant Depo., 50.)  Appellant acknowledged that the noose in his work area was in plain view of Davis.  He did not recall making a statement that the noose was a necklace for Emmett Till.  Appellant "may very well have" referred to the KKK at work.  (Appellant Depo., 53.)  Appellant did not recall whether he had ever discussed the KKK in the context of Barack Obama running for president, but he

stated "[t]here may have been a conversation about Mr. Obama and the Ku Klux Klan." (Appellant Depo., 55.) Appellant kept the noose "tacked to the wall" of his cubicle. (Appellant Depo., 60.) Appellant stated that the noose was "used as a training tool, as a[n] aid to another employee" (David Schmersal), to keep the employee calm during work calls to clients. (Appellant Depo. 58.)

{¶ 27} At the time appellant was placed on administrative leave, Stokes informed him that the company had received a complaint. When Stokes asked appellant what personal items from his desk he would like brought to the personnel office, appellant responded that he wanted "my briefcase, my thermos bottle, my glasses and * * * my gun; and then I chuckled." (Appellant Depo., 67.) When asked about the "gun" remark, appellant testified: "That was not well thought out." (Appellant Depo., 67.)

{¶ 28} After being placed on leave, Stokes spoke with appellant over the telephone on several occasions. During a conversation on June 27, 2008, appellant told Stokes that the noose symbolized nothing. Appellant subsequently had a conversation with Stokes on June 30, 2008, at which time he told Stokes that during the past weekend he had watched a Clint Eastwood movie, "Hang'em High," and that the movie reminded him of what the noose symbolized. (Appellant Depo., 71.) Appellant told Stokes that he realized this might create a credibility issue for him, as it took him some time to recall that information. On July 28, 2008, appellant was interviewed by Stokes and Vianne Gossett, the regional human resources manager for DFS. He was terminated on August 5, 2008.

{¶ 29} Appellant acknowledged that he initiated conversations about race, religion, and politics at the workplace, but he disagreed with DFS's business judgment in deciding to terminate his employment. Appellant believed he was "wronged as a consequence of false representations made by Ms. Davis." (Appellant Depo., 99.) According to appellant, Davis "lied and official[s] at Discover Financial acted upon that * * * resulting in my termination." (Appellant Depo., 99.) Appellant testified that "[b]ut for her complaint, I would still be there." (Appellant Depo. 99.)

{¶ 30} In the present case, appellant does not present direct evidence of age discrimination but, instead, contends he has established a prima facie case based on circumstantial evidence. In order to establish a prima facie case of age discrimination where no direct evidence is available, a plaintiff is required to demonstrate that he or she:

"(1) was a member of the statutorily protected class, i.e., was at least 40 years old at the time of the discrimination, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Knepper* at ¶ 11, citing *Coryell* at paragraph one of the syllabus.

{¶ 31} If a plaintiff establishes a prima facie case, "the employer is required to set forth some legitimate, non-discriminatory basis or bases for its action." *Id.* at ¶ 10. Once an employer is successful in articulating a legitimate, non-discriminatory reason, "the burden shifts back to the plaintiff to prove that the employer's stated reasons were not its true reasons, but merely a pretext for unlawful discrimination." *Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 27. In order to refute the employer's legitimate, non-discriminatory reason and establish that the reason is merely a pretext, "the plaintiff must demonstrate that the proffered reason '(1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct.' " *Abbott Laboratories* at ¶ 28, quoting *Knepper* at ¶ 12, citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000).

{¶ 32} Under Ohio law, " '[w]hen a plaintiff alleges disparate treatment discrimination, liability depends on whether the protected trait, i.e., age, actually motivated the employer's decision; that is, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome.' " *Abbott Laboratories* at ¶ 31, quoting *Miller v. Potash Corp. of Saskatchewan, Inc.,* 3d Dist. No. 1-09-58, 2010-Ohio-4291, ¶ 17, citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). Federal courts, in considering claims under the Age Discrimination in Employment Act of 1967, hold that in order to prevail on a disparate treatment claim a plaintiff must prove that age was the "but-for" cause for the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Similarly, Ohio courts have held that the "ultimate inquiry" in considering an employment based age discrimination case is "whether the plaintiff was a victim of intentional discrimination and was subject to an adverse employment decision *because of* his or her age, i.e., whether age was the 'but for' cause of the employer's adverse decision." (Emphasis sic.) *Miller* at ¶ 46, citing *Reeves,* citing *Gross.*

{¶ 33} Appellant contends in the instant case that the trial court erred in holding that he failed to make a prima facie showing of age discrimination.  We need not determine this issue, however, because even assuming appellant successfully established a prima facie case of age discrimination, he has failed to come forward with sufficient evidence to show that DFS's proffered legitimate, non-discriminatory reasons for terminating him were pretextual and that age was the "but for" cause of his termination.

{¶ 34} As noted under the facts, DFS received a letter from an attorney representing DFS employee Davis, alleging that Davis had been "racially harassed" by appellant at work.  The alleged harassment included appellant placing a hangman's noose in his work area in plain view of Davis, repeatedly making racial remarks to Davis, and making statements about the noose with respect to the KKK and Emmett Till.  In response, members of the DFS human resources department, including Stokes, conducted an investigation of the matter.  Following the investigation, DFS management made a decision to terminate appellant's employment, citing (1) appellant's inappropriate comment about having a gun in his desk, (2) appellant's admission that he regularly initiated inappropriate conversations regarding race, religion, and politics in the workplace, and (3) his display of a noose in his work cubicle.

{¶ 35} The DFS Code of Conduct, offered into evidence on summary judgment, provides in part:

> The Company is committed to a work environment in which all individuals are treated with dignity and respect. * * * The Company expects that all relationships among persons in the workplace will be business-like and free of bias, harassment, and violence.
>
> Misconduct, including discrimination, harassment, retaliation, or other forms of unprofessional behavior will not be tolerated.  Such behavior, even if not unlawful, will subject you to disciplinary action by the Company, up to and including termination.

{¶ 36} The record indicates that appellees articulated a legitimate, non-discriminatory reason for termination, i.e., an investigation that revealed findings of inappropriate behavior in the workplace in contravention of DFS policy.  Violation of a company policy, including a policy against harassment, constitutes a legitimate, non-

discriminatory rationale for terminating an employee. *Blackshear v. Interstate Brands Corp.,* S.D.Ohio No. 2:09-cv-06 (May 21, 2010).

{¶ 37} Appellant argues vigorously that he did not violate the company's Code of Conduct, asserting that Davis lied about his workplace behavior. Appellant also assails the decision-making process of DFS, and Stokes in particular, with respect to the investigation, claiming that Stokes exhibited confusion in her deposition testimony about what constitutes inappropriate workplace discussions.

{¶ 38} The issue, however, is not whether the complaints of harassment by Davis lacked credibility, or even whether DFS was mistaken in its belief that appellant violated company policy. Rather, the dispositive issue is whether the employer was motivated by discriminatory animus. *Kundtz v. AT&T Solutions, Inc.,* 10th Dist. No. 05AP-1045, 2007-Ohio-1462, ¶ 37.

{¶ 39} Thus, with respect to the allegations of harassment by another employee, the inquiry is limited to whether the decision-maker "*believed* that [the plaintiff] was guilty of harassment, and if so, whether this belief was the reason behind [the plaintiff's] discharge." (Emphasis sic.) *Elrod v. Sears Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991). Accordingly, "an employee cannot establish pretext merely by proving that the accusations against him are fabricated." *Stargard v. Banc One Corp.,* 13 Fed.Appx. 429, 433 (7th Cir.2001). *See also Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 379, quoting *Waggoner v. Garland*, 987 F.2d 1160, 1165 (5th Cir.1993) ("In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith' ").

{¶ 40} It is also insufficient for appellant to merely dispute that his conduct did not constitute a violation of company policy, or that DFS was mistaken in finding a violation under the facts. This court has noted that "in order to avoid summary judgment, the plaintiff must provide more than a simple denial of the conduct giving rise to the discharge." *Wigglesworth v. Mettler Toledo Internatl., Inc.,* 10th Dist. No. 09AP-411, 2010-Ohio-1019, ¶ 19. Instead, "[t]he plaintiff must present evidence creating a material dispute as to the employer's honest belief in its proffered legitimate, nondiscriminatory reason." *Id.*, citing *Joostberns v. United Parcel Servs., Inc.,* 166 Fed.Appx. 783, 791 (6th

Cir.2006).  Further, it is not the role of the judiciary to "second guess business judgments by an employer making personnel decisions."  *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 669 (9th Dist.1990).  *See also Brown v. Renter's Choice, Inc.*, 55 F.Supp.2d 788, 795 (N.D.Ohio 1999), quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984) ("An employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' ").

{¶ 41} As evidence of pretext, appellant relies upon his own affidavit testimony in which he states that, during the investigation, he was forced to answer certain questions about his personal beliefs and political affiliations. Appellant maintains that such questions were "inappropriate" and "used as a pretext for terminating his employment based upon his age."  (Appellant Affidavit, ¶ 19.)  Appellant's conclusory statements, however, are not sufficient to create an issue of fact as to whether DFS fired him because of his age.  *See Johnson v. Derwinski*, 6th Cir. No. 91-3898 (Jan. 15, 1993) (summary judgment proper where plaintiff failed to present evidence of pretext beyond bare allegations and conclusory statements contained in her affidavit).

{¶ 42} The DFS Code of Conduct, cited above, forbids harassment or unprofessional behavior by its employees.  Appellant does not deny that management at DFS confronted him about allegations of racial harassment, displaying a noose in his work area, and engaging in inappropriate conversations in the workplace.  Appellant acknowledged making the comment about a gun in the presence of Stokes, and that the remark was inappropriate and not well thought out.  Appellant did not deny placing the noose in his work area in plain view of Davis, and he admitted changing his explanation regarding the origin of the noose, recognizing himself that this created a credibility issue. Appellant also admitted initiating conversations about race and politics in the workplace, and that he may have made references to the KKK and Emmett Till.  Notably, the investigation itself was initiated because of a complaint by a co-worker, and the decision to terminate appellant was not made until DFS concluded an investigation and the matter was reviewed by various members of the human resources department and management. Based upon his own deposition testimony, appellant believes he would still be employed at DFS "but for" the complaints by Davis.

{¶ 43} Here, even accepting appellant's claims that the complaints by Davis were unreliable and that DFS was mistaken in its findings resulting from the investigation, appellant has failed to adduce evidence demonstrating that DFS did not honestly believe he had violated the company's Code of Conduct at the time it made the decision to terminate him. Construing the record most strongly in favor of the non-moving party, the evidence is insufficient for a reasonable fact finder to conclude that the reasons proffered by DFS for appellant's termination were merely pretext, or that age was the "but for" cause of the adverse employment decision.

{¶ 44} Appellant contends that the trial court failed to consider all of the materials on summary judgment in ruling on appellees' motion, arguing in general that the trial court's decision is short on reasoning, and that the court simply "rubber stamped" its earlier decision. Ordinarily, however, "[i]n the absence of a record which affirmatively shows otherwise, we must presume the trial court did review all of the evidence." *Sadi v. Alkhatib,* 10th Dist. No. 01AP-125 (Aug. 28, 2001). Thus, absent any indication to the contrary, we presume regularity in the trial court proceedings. *Id.* Further, this court's de novo review of the record has taken into consideration all of the materials submitted on summary judgment. Nor do we find persuasive appellant's contention that the trial court erred and construed the evidence most strongly in favor of appellees.

{¶ 45} Based upon this court's review of the record, we conclude that the trial court did not err in granting summary judgment in favor of appellees. Accordingly, appellant's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK and McCORMAC, JJ., concur.

McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____