| | |
|---|---|
| MARIA PLA | Case No. 2014-00918 |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| CLEVELAND STATE UNIVERSITY | |
| Defendant | |

{¶1} This case came to be heard on a Complaint brought by Plaintiff, Maria Pla, for age discrimination in violation of R.C. 4112 and promissory estoppel. The case proceeded to trial on the issues of liability and damages on March 14-16, 2016.

{¶2} At the conclusion of Plaintiff's case, Defendant moved for dismissal of all of Plaintiff's claims pursuant to Civ.R. 41(B)(2). Upon reviewing the Parties' arguments, the Court granted Defendant's motion, in part, dismissing Plaintiff's claim of promissory estoppel. Promissory estoppel is a quasi-contractual or equitable doctrine designed to prevent harm resulting from the reasonable and detrimental reliance of an employee upon the false representations of his employer. *Karnes v. Doctors Hospital*, 51 Ohio St. 3d 139, 142 (1990). To prevail on a promissory estoppel claim, a plaintiff must establish the following four elements: 1) a promise clear and unambiguous in its terms; 2) reliance by the party to whom the promise is made; 3) that reliance must be reasonable and foreseeable; and 4) the party claiming estoppel must be injured by the reliance. *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 570 N.E.2d 1076 (1991); *Masek v. Reliance Elec. Co.*, 60 Ohio St.3d 134, 573 N.E.2d 594 (1991); *Steele v. Mara Enters.*, 10th Dist. Franklin No. 09AP-102, 2009-Ohio-5716, ¶ 1. Upon careful consideration of Plaintiff's testimony and that of Dr. Angelin Chang, the Court found that Plaintiff did not establish any of the four elements of promissory estoppel. Dr. Chang testified that she never promised Plaintiff that she would get her job back. Rather, she merely informed

her that she was communicating with Defendant in order to facilitate a renewal of Plaintiff's contract. It was unreasonable for Plaintiff to rely on the alleged promise, as there is no evidence that Dr. Chang had the authority to promise a contract renewal. Finally, Plaintiff did not provide any evidence that she relied on the alleged promise to her detriment.

{¶3} Defendant's post-trial brief was filed on March 30, 2016 and Plaintiff's post-trial brief was filed on March 31, 2016. The following constitutes the Court's Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

{¶4} Plaintiff worked as a part-time piano instructor in Defendant's Music Department for over 19 years;

{¶5} Plaintiff taught a class called Keyboard Skills, which is a required class for all undergraduate music majors;

{¶6} Plaintiff was the only instructor of the Keyboard Skills class;

{¶7} The Gateway Exam is an internal student evaluation for music education students used to assess the skills students should acquire during their first two years of study to determine if they are ready for upper-level courses;

{¶8} During the time when both Dr. Birch Browning, Music Department Chair, and Plaintiff taught at the University, all of the students taking the Gateway Exam were students of Plaintiff: either they took her Keyboard Skills class, or Plaintiff exempted them from the class after evaluating their abilities;

{¶9} On June 30, 2014, Dr. Browning called Plaintiff to inform her that he decided not to renew Plaintiff's contract for the fall 2014 semester;

{¶10} Plaintiff's contract was previously renewed 23 years in a row;

{¶11} According to Defendant's policies, the decision to hire or fire part time faculty was exclusively within Dr. Browning's discretion and control;

{¶12}    At the time of her termination, Plaintiff was 73 years old and she was the oldest member of the Music Department by approximately 20 years;

{¶13}    Dr. Browning renewed Plaintiff's contract a total of four times between his promotion to Chair in 2012 and Plaintiff's termination in 2014;

{¶14}    Plaintiff's replacement, Dr. Shuai Wang, was 34 years old at the time she was hired and had no experience teaching full-time at the university level;

{¶15}    Dr. Wang's salary is $125 more per credit hour than Plaintiff's.

**CONCLUSIONS OF LAW**

{¶16} Plaintiff claims discrimination on the basis of age in violation of R.C. 4112.02. R.C. 4112 states, in part:

{¶17} "It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the race, color, religion, sex, military status, origin, disability, age or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶18} To establish an employment discrimination claim, a plaintiff must demonstrate an adverse employment action was causally linked to discriminatory intent. A plaintiff may introduce direct, circumstantial, or statistical evidence to show that the motivation for the adverse employment action plaintiff suffered was intentional discrimination. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457 (6th Cir.1990); *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir.2003). The ultimate inquiry is "whether the defendant intentionally discriminated against the plaintiff." *USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

{¶19} A prima facie claim for employment discrimination may be established with either direct evidence or indirect evidence. *Mauzy v. Kelly Servs., Inc.,* 75 Ohio St. 3d

578, 1996 Ohio 265, 664 N.E.2d 1272, 1276-77 (1996). Direct evidence "refers to a method of proof, not a type of evidence. It means that a plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory intent." *Mauzy,* 664 N.E.2d at 1279. Direct evidence of discrimination may be present, such as where an employer says, "I fired you because you are disabled." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998). The Court is aware that this type of evidence rarely occurs.

{¶20} Plaintiff believes there exists direct evidence of age discrimination in the form of a comment made by Dr. Browning. Specifically, upon becoming chair of the music department, in or around July 2012, he asked her if she had plans to retire.

{¶21} An employer's discriminatory comments may constitute direct evidence that an employee who was the subject of an adverse employment action was a victim of discrimination. Courts consider four factors to determine whether an employer's comments demonstrate an age bias:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

{¶22} *Skelton v. Sara Lee Corp.,* 249 F. App'x 450, 455 (6th Cir.2007) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477-78 (6th Cir.2002). "[N]one of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account." *Peters*, 285 F.3d at 478, citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994).

{¶23} The question about retirement was made by Dr. Browning in the scope of his employment. However, there is no evidence that it was related to his decision not to

renew Plaintiff's contract. This singular isolated comment was also made approximately two years before he decided not to renew her contract. Plaintiff testified that Dr. Browning did not make any other age-related remarks to her. Dr. Browning testified that he questioned Plaintiff regarding retirement solely for planning purposes, i.e. to ensure he had adequate time to hire a replacement should she decide to retire. The Court finds it is appropriate and reasonable for a newly promoted chair of a department to ask faculty members about retirement plans for logistical reasons. Further, the Supreme Court of the United States has held that retirement is analytically distinct from age. *Hazen Paper v. Biggins*, 507 U.S. 604, 610 (1993); *Kentucky Retirement Sys. v. EEOC*, 554 U.S. 135, 142 (2008). Therefore, no inference of age bias will be drawn from Dr. Browning's question.

{¶24} Plaintiff also attempts to demonstrate discriminatory intent on the basis of statistical evidence. "Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class." Barnes, 896 F.2d at 1466, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "When a plaintiff demonstrates a significant statistical disparity in the discharge rate, he or she has provided strong evidence that chance alone is not the cause of the discharge pattern." *Barnes*, 896 F.2d at 1466-69. "[F]or statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir.2006).

{¶25} The Court finds that Plaintiff's statistical data is insufficient to establish discriminatory intent. Plaintiff relies on a document produced by Defendant which purportedly shows the employees supervised by Dr. Browning, including their date of hire and date of termination. (Ex. #78.) Plaintiff contends that Dr. Browning's hiring practices are evidence of his age bias. Without an explanation of how the varying hires

and fires relate to each other, i.e. whom was replaced by whom, this document does little to demonstrate Dr. Browning's alleged age bias. The evidence submitted simply does not confirm Plaintiff's belief that Dr. Browning regularly hired younger employees and fired older employees. When questioned about specific instances of age-related terminations, Plaintiff asserts that two part-time instructors, including herself, were terminated. Dr. Browning testified that he makes approximately 100 employment decisions (hiring/renewal of contract, firing/non-renewal) per year. Therefore, it can hardly be said that two non-renewals out of approximately 200 employment decisions over a time period of approximately two years is statistically significant evidence of age discrimination. In addition, Dr. Browning testified that during the above-mentioned time period he hired eight people over the age of 40, four of which were in their 60's.

{¶26} In the absence of direct evidence, Plaintiff may establish a prima facie case using the disparate treatment method. Disparate treatment discrimination has been described as "the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Teamsters v. United States*, 431 U.S. 324, 335-36 (1977) fn. 15. In a disparate treatment case, liability depends upon whether the protected trait actually motivated the employer's decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). For example, the "employer may have relied upon a formal, facially discriminatory policy that required adverse treatment" of protected employees, or the "employer may have been motivated by the protected trait on an ad hoc, informal basis." *Id.* at 610. "Whatever the employer's decision making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Id.* at 610.

{¶27} To determine whether the employer's actions were motivated by discriminatory intent, and thereby establish a prima facie case, courts may employ the framework established by the United States Supreme Court in *McDonnell Douglas*.

Under the *McDonnell Douglas* standard, a plaintiff establishes a prima facie case of age discrimination by establishing that he: 1) was a member of a protected class; 2) suffered an adverse employment action; 3) was qualified for the position held; and 4) that comparable, non-protected persons were treated more favorably. *McDonnell Douglas Corp.,* 411 U.S. at 802. The Supreme Court of Ohio approved and slightly modified the *McDonnell Douglas* test to fit a claim of age-based wrongful discharge. *See Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983). Under the *Barker* standard, a plaintiff must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. *Id.*; *see also Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir.1982).

{¶28} Plaintiff has established her prima facie case under the *Barker/McDonnell Douglas* standards: 1) she was 73 years old at the time of her termination, 2) there is no dispute that her contract for the fall of 2014 was not renewed, 3) contrary to Defendant's assertion, Plaintiff was qualified for the position, having performed it for over 20 years, and 4) she was replaced by someone not belonging to the protected class.[1]

{¶29} Once a plaintiff establishes a prima facie case under the disparate treatment method, using the *McDonnell Douglas* standards, a presumption of age discrimination is created. Then, similarly to the direct evidence method, the burden of production then shifts to the defendant-employer to overcome the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp.; see also Allen v. Totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, ¶ 4.

---

[1]Considering her age, the average age of the workforce, and the average age of the Cleveland State University Department of Music, hiring someone substantially younger was almost certain to occur.

{¶30} Dr. Browning provided a number of reasons for the termination of Plaintiff. When he called Plaintiff to inform her of his decision he told her that her contract would not be renewed because her students failed the Gateway Exam. In response to Interrogatories by Plaintiff, used to impeach Dr. Browning, he gave the reason of unsatisfactory performance as evidenced by: 1) music education students having not done well on the Gateway Exam, which they must pass for acceptance into the licensure program in the College of Education, 2) students having to take additional lessons with [Plaintiff]; 3) junior level music education students not being taught basic information that they needed to pass the class; they said they were not told the information, 4) Plaintiff's syllabi pulled for failing to align with prescribed proficiencies for the course, she was teaching skills she did not need, and 5) Plaintiff did not change teaching materials, even after being asked.

{¶31} However, during trial, Dr. Browning testified several times that the reason for her termination was: for years he had witnessed students taking the Gateway exam and, in his opinion, the students performed at an inadequate level. Since Plaintiff was the only instructor responsible for those skills, and students either took her course, or she tested them out of the course, he believed the low performance was due to Plaintiff's instruction. When questioned about the apparent discrepancy with the reason he gave Plaintiff on the phone (students failed the exam), he explained that students were passing the Gateway, but below standards which he deemed acceptable. Further, Dr. Ziolek testified that Dr. Browning told him the reason he decided not to renew Plaintiff's contract was because she failed to stay current. The Court finds Defendant articulated a legitimate non-discriminatory reason for terminating Plaintiff.

{¶32} If a defendant provides a legitimate non-discriminatory reason for terminating an employee the burden shifts to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's reason was merely pretext to hide intentional discrimination. To meet this burden, the employee must submit evidence

that an employer's proffered reason (1) had no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 12. *See Hall v. Banc One Mgmt. Corp.*, 10th Dist. Franklin No. 04AP-905, 2006-Ohio-913, ¶ 31-34 (defining pretext). *See also Dautartas v. Abbott Labs.*, 2012-Ohio-1709 (10th Dist.). Under any of the three options, a plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject an employer's explanation and infer that the employer intentionally discriminated against him or her. *Id.* Beyond that, as explained later in this decision, Plaintiff must prove that the real reason for the adverse employment action was a discriminatory purpose.

**{¶33}** Plaintiff proffered evidence regarding Defendant's reasons for her termination. The original reason offered by Dr. Browning, when he called her to terminate her contract on June 30, 2014, was that her students had failed the Gateway Exam. Both Plaintiff and her significant other, Forest Collins, testified that Dr. Browning told Plaintiff the reason he was not renewing her contract was because her students had failed the Gateway Exam.[2] Dr. Browning testified that he could not recall whether he mentioned students failing the Gateway Exam during that phone call. However, he did recall telling her the reason he decided not to renew her contract was because for 13 years he had watched students during the Gateway Exam and in his professional opinion students consistently performed at an inadequate level. He testified that this was the sole reason for deciding not to renew Plaintiff's contract. Plaintiff presented evidence that the reason stated on the phone had no basis in fact. According to records provided by Defendant, all of the students eventually passed the Gateway Exam (some requiring retakes on certain sections). Plus, Drs. Chang, Ziolek, and Browning all

---

[2]Plaintiff and Mr. Collins testified that Dr. Browning used different terminology to describe not passing the Gateway Exam; Plaintiff used the word "failed" and Mr. Collins used the word "flunked." However, they both agree that the only reason given for the termination was that students had not passed the Gateway Exam.

testified that performance by an instructor's students on the Gateway exam is not in itself a justifiable reason for non-renewing the instructor's contract. Likewise, regarding Plaintiff's syllabus and teaching materials, Plaintiff admits that she was asked to make changes to her syllabus. However, Plaintiff made the requested changes to her syllabus and her replacement used an exact copy of the syllabus, and continues to do so. Therefore, even though this reason had a basis in fact, it does not seem to be the actual motivation for Plaintiff's termination, nor is it sufficient to warrant the termination.

{¶34} The Court finds that Dr. Browning's subjective beliefs were different than the standards of Cleveland State University and it is hard for the Court to believe Dr. Browning's stated reasons were the actual reason for his decision to terminate Plaintiff. Considering all of the students did in fact end up passing the Gateway exam and there was apparently no issue with Plaintiff's syllabus considering her replacement copied it and continues to use it, the Court does not believe Dr. Browning's stated reasons for termination are reasonable or appropriate. However, the Court is not tasked with determining what is appropriate or reasonable. The Court is tasked with determining whether his decision was the unlawful result of discriminatory intent.

{¶35} As a general rule, the Court will not substitute its judgment for that of the employer and will not second-guess the business judgment of employers regarding personnel decisions. *Kirsch v. Bowling Green State Univ.,* 10th Dist. No. 95API11-1476 (1996). Additionally, in a discrimination case, the Court must examine the employer's motivation, not a Plaintiff's perceptions. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987). Accordingly, just because it may appear unfair or unreasonable does not mean that the stated reasons are pretext for discrimination. "Plaintiffs lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." *Hartley v. Wis. Bell*, 124 F.3d 887, 890 (7th Cir.1997).

{¶36} Plaintiff has established that the reasons offered for her termination are likely false. However, she must also prove the real reason was discriminatory intent. "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and the discrimination was the real reason." *Crase v. Shasta Beverage, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 21. Federal courts, in considering claims under the Age Discrimination in Employment Act of 1967, hold that in order to prevail on a disparate treatment claim a plaintiff must prove that age was the "but-for" cause for the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). Similarly, Ohio courts have held that the "ultimate inquiry" in considering an employment based age discrimination case is "whether the plaintiff was a victim of intentional discrimination and was subject to an adverse employment decision *because of* his or her age, i.e., whether age was the 'but for' cause of the employer's adverse decision." (Emphasis sic.) *Morrissette v. DFS Servs., LLC*, 10th Dist. Franklin No. 12AP-611, 2013-Ohio-4336 citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 120 S.Ct. 2097 (2000). "The Cornerstone of the analysis [whether there was discriminatory intent] is whether the employment action is the result of discrimination – not merely whether the action is unfair or the justification questionable." *Price v. Matco Tools, Inc.*, 2007-Ohio-5116, ¶ 31 (9th Dist.).

{¶37} "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Vossman v. AirNet Sys.*, 10th Dist. Franklin No. 12AP-971, 2013-Ohio-4675. Under R.C. 4112, a plaintiff alleging age discrimination must show they were terminated because of their age. This is referred to as but-for causation. *See Smith v. Ohio Dep't of Pub. Safety*, 2013-Ohio-4210, 997 N.E.2d 597 (10th Dist.) ("Age discrimination cases, like retaliation cases, require proof of but-for causation."). What Plaintiff must prove by a preponderance of the evidence is that she was singled out because of her

age. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir.1998). Regardless of which method is used to establish discriminatory intent, Plaintiff must show that she was "discharged on account of age." *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 588, 1996-Ohio-265, 664 N.E.2d 1272, citing *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 575 N.E.2d 439 (1991).

{¶38} Plaintiff sets out circumstantial evidence which she believes, coupled with the established prima facie case, are sufficient to show that Defendant's reasons were pretext and that the real reason was intentional discrimination. First, Defendant asserted numerous different conflicting reasons for Plaintiff's termination. Second, the alleged disparity of qualifications and pay rate between Plaintiff and her replacement. Third, a comment by Dr. Ziolek in an email that "things are in the hands of younger folks now" and the fact that Dr. Ziolek testified that Dr. Browning informed him the reason for Plaintiff's termination was her failure to "stay current."[3] In regards to Dr. Ziolek's comment in the email about the department being in the hands of younger folks, one can infer that he simply meant that the new chair runs things differently, or that he is commenting on the fact that Dr. Browning is younger than Dr. Ziolek. The Court finds no such inference based on this statement that the Department of Music now discriminates against older employees. Plaintiff also asserts that Dr. Browning's conduct toward her and others is direct evidence of his discriminatory intent. Specifically, many years ago he scheduled an exam in conflict with one of hers, he did

---

[3]The Court is aware of the well-established principle that phrases such as "staying current" are often buzz words for age discrimination. However, as circumstantial evidence, Dr. Browning's comment alone is not sufficient for a finding of discriminatory intent. It can, however, be considered as evidence of pretext. The Court cannot reasonably infer that Dr. Browning's comment was indicative of his age bias. During trial Dr. Browning was never asked to confirm this statement nor was he asked what he meant by "staying current." As such, the Court is left to surmise the meaning. In considering this statement and all of the remaining circumstantial evidence, the Court can just as reasonably infer that a failure to "stay current" is consistent with the other stated reasons for termination, i.e. that Plaintiff failed to upgrade her syllabus or course materials. Even though those reasons are likely not the real reason for termination, Plaintiff's inability to "stay current" may be related to her teaching methods and is not inherently related to her age.

not respond to her emails, he avoided her, and he was friendly with younger students while some older students complained about his behavior. The Court finds no evidence of discriminatory intent based on Dr. Browning's alleged conduct. An inference can be drawn that Dr. Browning did not like Plaintiff. However, there is absolutely no evidence that his dislike was related to her age. "Mere dislike that is unrelated to the plaintiff's [age] will not support a claim of discrimination." *Smith v. Ohio Dep't of Pub. Safety*, 2013-Ohio-4210, 997 N.E.2d 597 (10th Dist.), citing *Skvarla v. Potter*, 109 Fed. Appx. 790, 801 (7th Cir.2004). Plaintiff also alleges that Dr. Wang, her replacement, was far less qualified for the position. However, she did not establish the fact that Dr. Wang was less qualified. While Dr. Wang had no teaching experience, she did have a doctorate and a substantial amount of experience performing with orchestras and other music groups. She was also recommended by a former member of the Cleveland State University Music Department. One could draw an inference that the disparity in pay rate was related to Dr. Wang's advanced degrees and had nothing to do with age.

**CONCLUSION**

{¶39} Considering the circumstantial evidence and all of the facts and circumstances described by Plaintiff, the Court finds that Plaintiff has failed to meet her burden of proving that Defendant terminated her because of her age. A trier of fact may draw more than one inference from the evidence. In this case, several inferences may be drawn. Plaintiff's burden is that she must prove by a preponderance of the evidence that the chosen inference was that her termination was based upon her age. She has not done so – mere suspicion is not sufficient. This a close case. The Court finds that the evidence is equally balanced. Thus, Plaintiff did not meet her burden of demonstrating by a preponderance of the evidence that she was terminated by Dr. Browning because of her age.

**{¶40}** Judgment shall be rendered in favor of Defendant.

_____
DALE A. CRAWFORD
Judge

[Cite as *Pla v. Cleveland State Univ.*, 2016-Ohio-3150.]

| | |
|---|---|
| MARIA PLA | Case No. 2014-00918 |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| CLEVELAND STATE UNIVERSITY | |
| Defendant | |

{¶41} This case was tried to the Court on the issues of liability and damages. The Court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of Defendant. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
DALE A. CRAWFORD
Judge

cc:

Caryn Markowitz Groedel
Tiffany Fischbach
31340 Solon Road, Suite 27
Cleveland, Ohio 44139

Lee Ann Rabe
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed April 12, 2016**
**Sent to S.C. Reporter 5/25/16**