[Cite as *Watson v. Ohio Dept. of Dev.*, 2025-Ohio-5877.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| YVONNE WATSON <br><br> Plaintiff <br><br> v. <br><br> OHIO DEPARTMENT OF DEVELOPMENT <br><br> Defendant | Case No. 2023-00531JD <br><br> Judge Lisa L. Sadler <br> Magistrate Robert Van Schoyck <br><br> <u>DECISION</u> |

{¶1} Plaintiff, formerly an employee of Defendant, brings this action claiming that Defendant unlawfully discriminated against her based on race and age and unlawfully retaliated against her, resulting in the termination of her employment.

{¶2} On April 21, 2025, Defendant filed a Motion for Summary Judgment pursuant to Civ.R. 56(B). The motion is now fully briefed and comes before the Court for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4. For the following reasons, the motion shall be granted.

**Standard of Review**

{¶3} Civ.R. 56(C) states, in part, as follows:

{¶4} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the

motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 2004-Ohio-7108, ¶ 6, citing *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317 (1977).

{¶5} "The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact." *Starner v. Onda*, 2023-Ohio-1955, ¶ 20 (10th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations." *Id.* "Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial." *Hinton v. Ohio Dept. of Youth Servs.*, 2022-Ohio-4783, ¶ 17 (10th Dist.), citing *Dresher* at 293; *Vahila v. Hall*, 77 Ohio St.3d 421, 430 (1997); Civ.R. 56(E).

**Factual Background**

{¶6} In support of its motion, Defendant submitted a transcript of Plaintiff's deposition in which she relates that she began working for Defendant on June 7, 2021, in the role of Manager of Community Service Programs, in Defendant's Office of Community Assistance. (Watson Depo., p. 76.) Plaintiff explained that the office was responsible for disbursing federal funds to local community action agencies throughout the state and monitoring those agencies to ensure the funds were spent appropriately. (*Id.* at p. 80.)

{¶7} Plaintiff testified that for the first few months in this role, she reported to Megan Meadows, but when Defendant promoted Meadows to be Chief of the Community Services Division, Plaintiff began reporting to Latisha Chastang, Deputy Chief of the Office of Community Assistance. (*Id.* at p. 98.)

{¶8} According to an affidavit that Plaintiff submitted in response to the Motion for Summary Judgment, she received positive assessments of her work performance and did not receive any discipline. (Watson Affidavit, ¶ 2.) It is undisputed, though, that

Plaintiff had difficulty completing certain work assignments, including "an assignment to make corrections to the fiscal year 2020 CSBG Report", and Meadows ultimately removed Plaintiff from this assignment. (Response, pp. 3-4.) Chastang, in an affidavit submitted by Defendant, authenticates an email exchange from August 2022 where she communicated with Plaintiff about upcoming deadlines for certain projects and explained that "[t]hese **deadlines are firm**"; in Plaintiff's emailed response, Plaintiff stated that she understood "the notion of Megan's **firm deadlines**; however, the overall messaging comes across as threatening, punitive, and disparate treatment", and Plaintiff went on to express her "concern about deadlines in general". (Emphasis in original.) (Chastang Affidavit, Exhibit A.)

{¶9} According to Plaintiff, she came to feel she was made a scapegoat, that she was blamed for things beyond her control, that she was not given the support and resources she needed, that deadlines were imposed on her in a way that she found threatening, and that "as a black woman over 40 and counterparts that were Caucasian, there was a difference being made" in how she was treated. (Watson Depo., p. 169.) Plaintiff testified that, based on these concerns, on October 7, 2022, she sent an email to Meadows' supervisor, Deputy Director of Program Administration Mike Fraizer, with the following message:

> Good Morning Mike,
>
> The purpose of my email is to share my concerns regarding my position as Manager of Community Services.
>
> I'm experiencing discriminatory harassment. I have several concerns regarding Megan Meadows and her passive/aggressive microaggression, and implicit bias demonstrated toward me; I identify my color as a black woman and age as the reason.
>
> I've shared my concern with Megan directly, noted as disparate treatment. The culture I've experienced withholds knowledge and resources and encourages division among staff. Megan has assigned tasks without

providing adequate training, clear guidance, or an opportunity to reach out to other staff with questions. Moreover, Megan passes directives through others that are presented to me with bullying overtones, intimidation, questioning my abilities, and undermining of my work and delivered as "Megan said."

Mike, I am committed to the mission of empowering communities to succeed and working alongside all those involved in helping individuals achieve self-sufficiency. The work environment is hostile, and I wanted you to be aware of my experiences thus far, as I am very concerned.

Thank you for your time.

(*Id.* at p. 168, Exhibit 8.)

{¶10} In a deposition transcript submitted by Defendant, its Deputy Director of Administrative Operations, Susan Boothe, testified that she supervises Defendant's human resources department, among other responsibilities, and that she attended Plaintiff's second employment interview with Defendant and recommended hiring her. (Boothe Depo., pp. 5, 9.) Boothe stated that the human resources department opened an investigation into the internal complaint that Plaintiff made to Fraizer. (*Id.* at p. 13.) The investigation was led by Human Resources Chief Maria Saliaris and Associate Legal Counsel Brison Wammes and included interviews of both Plaintiff and Meadows, Boothe stated. (*Id.* at pp. 16, 51.)

{¶11} Plaintiff stated that on or about November 9, 2022, during the pendency of the human resources department's investigation into her internal complaint, she separately filed a charge of employment discrimination with the Ohio Civil Rights Commission (OCRC) relating to some of the same concerns as she raised in her internal complaint. (Watson Depo., p. 248, Exhibit 16.) Plaintiff testified that during one of the interviews with the officials investigating her internal complaint, she told them that she had filed the OCRC charge of discrimination or was in the process of doing so. (Watson Depo., pp. 249-250.) According to Boothe, OCRC notified Defendant's legal department of the charge of discrimination on December 7, 2022. (Boothe Depo., p. 17.)

{¶12} Boothe stated that at the conclusion of the human resources department's investigation into Plaintiff's internal complaint, an investigation report was produced on November 18, 2022, a copy of which she authenticated in her affidavit. (Boothe Depo., p. 13; Boothe Affidavit, Exhibit A, p. 000097.) There is no dispute that the investigation report concluded there was no evidence to support Plaintiff's internal complaint.

{¶13} Matthew McClellan, Defendant's Assistant Director, testified in a deposition transcript submitted by Defendant that in November 2022 he learned that concerns about Plaintiff's handling of Defendant's records and confidential information arose during the human resources investigation into the internal complaint. (McClellan Depo., p. 11.) McClellan stated that after the release of the November 18, 2022 investigation report regarding the internal complaint, a separate investigation was opened to determine if Plaintiff had violated Defendant's data security policies. (*Id.* at pp. 23-25.)

{¶14} Boothe, in her affidavit, authenticated a copy of a December 12, 2022 investigation report, prepared by Wammes, titled "Acceptable Use of IT Resources and Valid Access of Confidential Information". (Boothe Affidavit, ¶ 4, Exhibit A.) It is explained in this report that, during the human resources investigation of Plaintiff's internal complaint, Plaintiff's email messages were accessed for the purpose of reviewing communications between her and those whom she accused of inappropriate conduct in the internal complaint. (*Id.*) (As stated above, the internal complaint alleged that Meadows or her subordinates had discriminated against Plaintiff in several ways, including in their communications with her.) The report provides that the review of Plaintiff's email messages revealed "a large number of emails containing possibly sensitive information that were forwarded, not addressed to any person, blind copying [Plaintiff's personal email address]", and this separate matter was then referred to Defendant's legal department "for possible review of Development Policy." (*Id.*) Indeed, Plaintiff acknowledged in her deposition that she transferred files to a personal email account by forwarding or attaching them to blind carbon copy (BCC) emails from her work email account. (Watson Depo., pp. 211; 219.) The legal department's investigation report found that Plaintiff sent numerous emails like this during the week of November 14, 2022, and when limiting the investigation to the dates of November 17 and 18, 2022, when the highest volume of emails were sent, it was concluded that Plaintiff had transferred "(1)

internal communications regarding confidential DOD procedures; (2) sensitive outside communications with third-party contractors discussing both DOD procedures and third-party procedures; (3) attachments containing both confidential and non-confidential information." (Boothe Affidavit, Exhibit A, p. ODD – 000094.) The report also found that Plaintiff had transferred personal information such as the names of grantees or clients. (*Id.* at ODD – 000096.)

{¶15} The legal department's investigation was issued on December 12, 2022, and was addressed to Chief Legal Counsel Jack Christopher, Saliaris, and Boothe. (Boothe Affidavit, ¶ 4, Exhibit A.) McClellan recalled that he too learned the results of the legal department's investigation on December 12, 2022, and that he met with other senior management officials later that day to discuss the matter. (McClellan Depo., pp. 11-12, 14; 23; 18-19.) McClellan stated that, because the legal department's investigation established "that there was sensitive information that was being sent out that shouldn't have been", he recommended at the meeting that Plaintiff's employment be terminated, and Boothe recalled in her affidavit being at the meeting and concurring with the recommendation, based on what she had seen in the report, as it demonstrated that Plaintiff violated department policy. (*Id.* at pp. 16, 18-19; Boothe Affidavit, ¶ 4.) McClellan testified that after this meeting, he went to Defendant's director with the recommendation to terminate Plaintiff's employment, and after discussing the matter with the director, she agreed with the recommendation and gave the final approval to move ahead with the termination. Later that day, Plaintiff was instructed to come to the office the next day, McClellan stated. (McClellan Depo., p. 15.)

{¶16} Plaintiff testified that she came to the office as instructed on December 13, 2022, and attended a meeting with Boothe and Assistant Chief of Legal Services Benjamin LaGrosso where she was told that McClellan had asked for her resignation. (Watson Depo., p. 213.) Plaintiff explained that she signed a letter of resignation that same day because she understood that if she did not do so her employment would have been terminated. (*Id.* at p. 217.) Plaintiff stated that she was not given a reason at the meeting for why she was being asked to resign, and Boothe stated that it was Defendant's standard practice at a meeting of this nature to not discuss the reason. (*Id.* at p. 218.; Boothe Depo., p. 36.)

{¶17} Plaintiff, who was born in 1967 and identifies as African American, brings this action under R.C. Chapter 4112 claiming that the termination of her employment constituted unlawful discrimination based on her race and age and unlawful retaliation based on her complaining of discrimination and harassment both internally and with the OCRC.  (Complaint, ¶ 11-12.)

**Law & Analysis**

**Race & Age Discrimination**

{¶18} Counts I and II of the complaint set forth claims of race and age discrimination under R.C. Chapter 4112.  R.C. 4112.02 provides, in part:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race. . .[or] age. . .of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶19} "A plaintiff must prove discriminatory intent to prevail on a race or age discrimination claim." *Drummond v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1096, ¶ 13 (10th Dist.).  "Absent direct evidence of retaliatory intent, Ohio courts analyze retaliation claims using the evidentiary framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668, a case involving claims of racial discrimination under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. 2000e, et seq."  *Veal v. Upreach LLC*, 2011-Ohio-5406, ¶ 16 (10th Dist.); *see also Little Forest Med. Ctr. v. Ohio Civil Rights Comm.*, 61 Ohio St.3d 607, 609-610 (1991) ("federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.").

{¶20} To establish a prima facie case of race discrimination, "a plaintiff must demonstrate that he or she: (1) was a member of the statutorily protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside the protected class or that the employer treated a similarly

situated, non-protected person more favorably." *Nelson v. Univ. of Cincinnati*, 2017-Ohio-514, ¶ 33 (10th Dist.).

{¶21} Similarly, with respect to age, "[a] prima facie case of employment discrimination may be established by proof that the plaintiff-employee: '(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age.'" *Pettay v. DeVry Univ., Inc.*, 2021-Ohio-1380, ¶ 22 (10th Dist.), quoting *Coryell v. Bank One Trust Co. N.A.*, 2004-Ohio-723, ¶ 20. "Alternatively, a plaintiff can establish the fourth prong by demonstrating that a 'comparable non-protected person was treated better.'" *Bowditch v. Mettler Toledo Intl., Inc.*, 2013-Ohio-4206, ¶ 15, quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir.1992).

{¶22} "Once a plaintiff establishes a prima facie case [of race or age discrimination], the employer is required to set forth some legitimate, non-discriminatory basis or bases for its action." *Bogdas v. Ohio Dept. of Rehab. & Corr.*, 2009-Ohio-6327, ¶ 9 (10th Dist.). "If the employer is able to meet this burden, the plaintiff is then afforded an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id.* "The ultimate burden of persuasion always remains with the plaintiff . . . . In order to show pretext, a plaintiff must show both that the reason was false, and that discrimination was the real reason." *Ames v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4774, ¶ 27 (10th Dist.).

{¶23} As to the claim of race discrimination, Defendant assumes for purposes of its Moton for Summary Judgment that Plaintiff can establish a prima facie case. But as to the claim of age discrimination, Defendant argues that Plaintiff cannot establish a prima facie case. Specifically, Defendant argues that Plaintiff cannot establish that she was replaced by someone substantially younger or that Defendant treated a similarly situated, non-protected employee more favorably.

{¶24} There is no dispute that Defendant hired someone who was 62 years of age—older than Plaintiff—to fill the Manager of Community Services Program role after Plaintiff's departure. As to whether there were any similarly situated employees who were treated more favorably, in her deposition Plaintiff identified Claudia Torres, Brandy

Kolattukudy, and Keri Harris as Caucasian persons under the age of 40 who received more favorable treatment in the workplace, such as being included in more meetings. (Watson Depo., pp. 148, 175.)  But "[w]here a plaintiff in a discrimination claim contends his or her employer provided more favorable treatment to a non-protected similarly situated person, the individual with whom the plaintiff seeks to compare his treatment must be similar in all relevant respects." *Tanner v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-1149, ¶ 23 (10th Dist.).  Here, Plaintiff does not point to evidence suggesting that these individuals engaged in the same conduct that Defendant identifies as the basis for terminating her employment, i.e. violating Defendant's data security policies.  *See Id.* ("Courts must consider whether the proffered individual . . . engaged in the same conduct").  And Plaintiff stated in her deposition that these individuals held different positions and did not report to the same supervisor that she did, and their positions were at the level of Plaintiff's supervisor, not Plaintiff's level.  (Watson Depo., pp. 119, 142, 148-149, 175-176.)  Therefore, Plaintiff was not similarly situated to Torres, Kolattukudy, or Harris.

{¶25} Defendant met its burden of coming forward with evidence to affirmatively show that Plaintiff cannot establish a prima facie case of age discrimination.  In her Response to the Motion for Summary Judgment, Plaintiff offers no argument in support of the age discrimination claim, much less point to evidence demonstrating a genuine issue of material fact on the claim.  Plaintiff thus did not meet her reciprocal burden of showing that a genuine issue exists for trial.  *See Meredith v. ARC Indus.*, 2024-Ohio-4466, ¶ 22 (10th Dist.), quoting *Heimberger v. Zeal Hotel Group Ltd.*, 2015-Ohio-3845, ¶ 14 (10th Dist.), quoting *Dresher*, 75 Ohio St.3d at 293 ("If the moving party has satisfied its initial burden under Civ.R. 56(C), then the non-moving party '"has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."'").  Defendant is therefore entitled to judgment on Plaintiff's claim of age discrimination.

{¶26} Defendant further argues that, whether or not Plaintiff could establish a prima facie case of age discrimination, it is entitled to summary judgment on the claims of both race and age discrimination because there was a legitimate, nondiscriminatory reason for

terminating her employment, i.e. her "mishandling of the Department's confidential records". (Motion, p. 1.)

{¶27} In a deposition transcript submitted by Defendant, McClellan testified that he made the recommendation to Defendant's director to remove Plaintiff from her position, and that he did so based upon the results of the legal department's investigation into Plaintiff's potential violation of Defendant's data security policies, and after meeting with other senior management officials to consider the matter. (McClellan Depo., pp. 15, 18.) The reason for removing Plaintiff, according to McClellan, was that the legal department's investigation showed "there was sensitive information that was being sent out that shouldn't have been." (*Id.* at p. 16.) Boothe, one of the officials who met with McClellan to discuss the results of the investigation, stated that she too was in favor of removing Plaintiff from employment because Plaintiff's conduct constituted "a violation of policy." (Boothe Depo., p. 22.)

{¶28} As context for the decision to terminate Plaintiff's employment over such concerns, Defendant points out that, as Plaintiff acknowledged in her deposition, she reviewed the Development Team Handbook soon after she began working for Defendant. (Watson Depo., p. 90.) Included in the Handbook was a section titled "Information Technology (IT) Resources and Acceptable Use". (*Id.* at Exhibit 13.) There is no dispute that in the "Operation and Maintenance" subpart of this section, it provided that "Confidential or sensitive data should never be stored on a personal flash drive or personal storage media. When it is necessary to save confidential or sensitive data to storage media, Development-issued storage media formatted as prescribed by the IT Director must be used." (*Id.* at Exhibit 13, p. ODD-001615.) Another subpart, titled "File Transfer", stated, in part: "Do not transfer files by e-mail to a personal device." (*Id.* at Exhibit 13, p. ODD-001616.) And under the subpart titled "PERSONAL DEVICES", it stated, in part:

1. The use of a personal device for state business must be approved by the IT Division in advance.

2. Only apps approved by the IT Division may be used to access state data or information.

3. Downloading or saving state information directly to a personal device is prohibited.

(*Id.* at Exhibit 13, p. ODD-001617.)

{¶29} Defendant also notes that when Plaintiff was hired she signed a "Data Confidentiality Agreement" which stated, in part: "You must not remove or cause to be removed any record, report, or file from the location where it is kept except as necessary for you to perform your duties in accordance with the policies of [Defendant] and your agency." (*Id.* at p. 132, Exhibit 13, p. ODD-001344.) Defendant also argues that it "considers confidentiality when making daily business decisions", and as one example of that it points to a time when Plaintiff sought to perform her job via teleworking from a tutoring center but the request was denied "due to confidentiality reasons." (*Id.* at p. 127, Exhibit 6.)

{¶30} The evidence identified by Defendant demonstrates that the security and confidentiality of its records and data was a priority, as demonstrated in its written policies and organizational practices, which generally required that electronic data only be stored on and accessed from Defendant's computer network or other media issued or approved by Defendant's IT Division. Moreover, Defendant has presented evidence showing that the decision to terminate Plaintiff's employment was based on concerns that her sending Defendant's records and confidential data to a personal email account violated Defendant's policies, which did not permit transmitting records from Defendant's computer network onto a personal email account, accessing records through a personal email application, nor storing them there. Defendant thus met its burden of showing that Plaintiff's failure to follow organizational policies constituted a legitimate, nondiscriminatory reason for the action taken by Defendant. *See Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 252 (6th Cir. 2023) ("an employee's . . . failure to follow company policies constitute legitimate, nonretaliatory reasons to terminate employment").

{¶31} The burden therefore shifts to Plaintiff to demonstrate that there is a genuine issue of material fact as to whether the reason proffered by Defendant was merely pretext for discrimination based on race or age.

{¶32} Plaintiff argues that she "can clearly show ODD's claimed reason for its termination of her is pretext for discrimination . . . ." (Response, p. 14.)

{¶33} Plaintiff argues that Defendant "first claimed it had no reasons for terminating [her]. Then it asserted it had a valid basis for its action, namely the emailed documents." (Response, p. 14.) According to Plaintiff, citing *Cicero v. Borg-Warner*, 280 F.3d 579, 592 (6th Cir. 2002), these represent "changing rationales" that demonstrate pretext. While Plaintiff asserts that Defendant "claimed it had no reasons" for the action, what Plaintiff described in her deposition was that at the meeting where she was asked to resign, she "asked what was the purpose for this decision, and [Susan Boothe] said there was no purpose." (Watson Depo., p. 214.) Boothe explained in her deposition that she responded that way because it is Defendant's policy to not provide reasons or background information to employees who are asked to resign in lieu of termination; rather, she only relays Defendant's decision to the employee, as it is "not a time to negotiate or talk through the details." (*Id.* at p. 36.) The fact that Boothe, consistent with this policy, would not identify the reason for Defendant's decision during the meeting does not controvert the evidence presented by Defendant that establishes that it had already decided to terminate Plaintiff's employment based on her violation of Defendant's data security policies. The authority on which Plaintiff relies, *Cicero*, is distinguishable, as in that case the employer claimed that it terminated the employee for poor performance but provided no contemporaneous evidence of performance concerns, and, to the contrary, it was only after the termination that the employer "raised serious complaints about his performance, and even then, it gave shifting justifications for his discharge." *Cicero* at 591-592. Here, Defendant has provided contemporaneous evidence of concerns about Plaintiff mishandling records and confidential information, and while it was Defendant's policy to not identify those concerns to Plaintiff when she was asked to resign, the uncontroverted evidence shows that those concerns have been Defendant's reason all along for ending her employment. Plaintiff points to no evidence suggesting that there was any reason for the action other than the one identified by Defendant.

{¶34} Plaintiff next argues that when she sought unemployment benefits following her tenure with Defendant, the Ohio Department of Job and Family Services "rejected" Defendant's explanation for her separation from employment. (Response, p. 14.) But the decision of the Ohio Department of Job and Family Services on Plaintiff's application for unemployment benefits is not relevant to the claims of employment discrimination and

retaliation at issue herein.  *See Morningstar v. Circleville Fire & EMS Dept.*, 2018 U.S. Dist. LEXIS 131291 (S.D.Ohio Aug. 6, 2018), citing *Blumensaadt v. Standard Products Co.*, 744 F.Supp. 160, 163 (N.D.Ohio 1989).

{¶35} Next, Plaintiff argues that "there exists no clear written policy against emailing documents to a personal email address."  (Response, p. 14.)  And Plaintiff argues that "the Handbook is enormous and [Plaintiff] did not read it thoroughly."  (*Id.* at p. 7.)  Plaintiff acknowledged in her deposition that the Handbook was available to her and she recalled looking at it, but even if it is assumed that Plaintiff did not read the Handbook thoroughly, this does not controvert Defendant's proffered reason for terminating Plaintiff's employment.  (Watson Depo., pp. 87-90.)  Defendant's Handbook provided, in part, that "[c]onfidential or sensitive data should never be stored on . . . personal storage media", that employees shall "not transfer files by e-mail to a personal device", and that "[o]nly apps approved by the IT Division may be used to access state data or information."  (Watson Depo., Exhibit 13, pp. ODD-001615-ODD-001617.)  It is undisputed that Plaintiff transferred files and information by email from Defendant's secure computer network to a personal email account outside Defendant's network, accessible from a third-party email application, without approval of the IT Division.  Under the language of the Handbook, Plaintiff was not permitted to store such files, nor access such files, in this manner.

{¶36} Moreover, even if one could construe Defendant's policies to not have specifically barred the conduct in question, "so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).  "The inquiry, therefore, must focus on whether the employer's reasons for its decision were honestly held, not on whether the employer's reasons were right."  *Smith v. Ohio Dept. of Pub. Safety*, 2013-Ohio-4210, ¶ 78 (10th Dist.).  "In order for an employer to claim an honest belief in its proffered reason, the employer must establish its reasonable reliance on particularized facts that were before it at the time it made the adverse employment decision."  *Kenner v. Grant/Riverside Med. Care Found.*, 2017-Ohio-1349, ¶ 30 (10th Dist.).  Here, Defendant established through the deposition testimony of McClellan and

Boothe that the decision to request Plaintiff's resignation was based on the results of the legal department's investigation into Plaintiff's alleged violation of Defendant's data security policies.  Plaintiff has not identified evidence contravening the testimony of McClellan and Boothe as to their having an honestly held belief, at the time of the decision, that Plaintiff had acted improperly in emailing Defendant's records and confidential data to a personal email account.

{¶37} Plaintiff also argues that she had "implicit permission" or "tacit permission" from Chastang and Meadows to email documents to herself.  (Response, pp. 9, 15.) Plaintiff stated in her deposition that when working in Defendant's offices she was able to print documents from Defendant's printers, but when working from home as part of her hybrid work schedule, she occasionally emailed documents to her personal email account in order to print them from her personal printer.  (Watson Depo., pp. 205, 208.)  Although Plaintiff does not assert that Chastang and Meadows expressly permitted this, she argues that it "was well known by Ms. Chastang and Ms. Meadows" that she and others did so. (Response, p. 9.)

{¶38} Plaintiff does not argue, nor point to evidence, however, that Chastang and Meadows were involved in the decision to terminate her employment.  McClellan, who was a decisionmaker and took his recommendation to Defendant's director, testified in his deposition that he was not aware of any employees transferring records or confidential information to personal email accounts to print at home, nor was he aware of any employees having permission to do so.  (McClellan Depo., pp. 14, 25.)  Boothe testified similarly that she did not know of any such practice, nor did she have any knowledge of Chastang or Meadows approving of such a practice.  (Boothe Depo., pp. 22-23.)  Plaintiff has not identified countervailing evidence demonstrating that the decision to terminate her employment was made by anyone with knowledge of any such practice among employees or knowledge of any supervisors approving of such a practice.

{¶39} Even if it is assumed for Civ.R. 56 purposes that Plaintiff had permission from Chastang and Meadows to transfer documents to her personal email account, the uncontroverted evidence is that Defendant's senior management decided to terminate Plaintiff's employment, based on the particularized facts known to them, with no knowledge of this, and "'so long as the employer has established its honest belief, 'the

employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.'" *Tibbs v. Calvary United Methodist Church*, 505 Fed.Appx. 508, 513-514 (6th Cir. 2012), quoting *Seeger v. Cincinnati Bell Tele. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012).

{¶40} Plaintiff further argues that Defendant's proffered reason for terminating her employment is "undermined" by the fact that Defendant did not investigate whether other employees transferred Defendant's records or confidential information to their personal email accounts, and that the decision to terminate her employment was made by "people who did not know her at all . . . and who never asked her why she emailed the documents to herself . . . ." (Response, pp. 10, 15.) Yet, Defendant has presented uncontroverted evidence as to the facts on which the decision was made, namely the legal department's investigation and the conclusion that Plaintiff's actions violated Defendant's data security policies, and "in determining whether an employer reasonably relied on the particularized facts before it, [courts] do not require that the decisional process used by the employer 'be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Tillman v. Ohio Bell Tel. Co.*, 545 Fed.Appx. 340, 349 (6th Cir. 2013), quoting *Seeger*, 681 F.3d at 285, quoting *Smith*, 155 F.3d at 807; *see also Davis v. Landscape Forms, Inc.*, 640 Fed.Appx. 445, 454 (6th Cir. 2016) ("An employer's investigation . . . does not have to be perfect or exhaust all possibilities.").

{¶41} Plaintiff also argues that she did not share Defendant's records or confidential information with any third parties and that there is no evidence of any third party accessing the data. (Response, p. 15.) But Plaintiff's employment was terminated for violating Defendant's data security policies, and the "[v]iolation of a company policy . . . constitutes a legitimate, non-discriminatory rationale for terminating an employee." *Morrissette v. DFS Servs., LLC*, 2013-Ohio-4336, ¶ 36 (10th Dist.); *see also Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 252 (6th Cir. 2023) ("an employee's insubordination and her failure to follow company policies constitute legitimate, nonretaliatory reasons to terminate employment."). Whether actual harm occurred is immaterial to the pretext analysis. *See Carter v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 130448, *20 (N.D. Ohio

Sept. 22, 2016) ("Whether or not the customer was harmed is irrelevant to the pretext analysis.").

{¶42} Finally, according to Plaintiff, Defendant asserts "that [Plaintiff's] being told she could only telework out of her home, rather than at a tutoring center that she runs, due to confidentiality concerns shows she understood that she could not email documents to herself. (MSJ, p. 2). This is a non sequitur. All that it showed was ODD was concerned about confidential information being heard or seen by third parties." (Response, p. 8, fn. 2.) But in the Motion for Summary Judgment, Defendant expressly notes that this was simply one "example" of how Defendant "considers confidentiality when making daily business decisions." (Motion, p. 2.) As Plaintiff concedes, this shows that Defendant "was concerned about confidential information being heard or seen by third parties." (Response, p. 8, fn. 2.) Rather than demonstrating an issue of fact, this concern is consistent with Defendant's proffered reason for terminating Plaintiff's employment.

{¶43} Viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to identify a genuine issue of material fact for trial. Defendant met its burden of proffering evidence that the decision to terminate Plaintiff's employment was for a legitimate, non-discriminatory reason. Plaintiff did not meet her reciprocal burden of coming forward with evidence showing that Defendant's proffered reason was false and that discrimination because of race or age was the true reason. Reasonable minds can therefore only conclude that Plaintiff cannot prevail on her claims that the termination of her employment constituted unlawful discrimination because of race or age.

**Hostile Work Environment**

{¶44} Defendant argues in its Motion for Summary Judgment that, to the extent the complaint may be construed to raise claims of race or age-based discrimination on a hostile work environment theory pursuant to R.C. 4112.02, Plaintiff cannot establish all the necessary elements of any such claim.

{¶45} A prima facie case of discrimination under a hostile work environment theory based on race or age is established by showing that the employee (1) was a member of a protected class, (2) was subjected to unwelcome harassment because of race or age, (3) that had the effect of unreasonably interfering with the employee's work performance

and creating an objectively intimidating, hostile or offensive work environment. *Hinton v. Ohio Dept. of Youth Servs.*, 2022-Ohio-4783, ¶ 33 (10th Dist.) (race discrimination); *Hoyt v. Nationwide Mut. Ins. Co.*, 2005-Ohio-6367, ¶ 68 (10th Dist.) (age discrimination).

{¶46} Plaintiff's internal complaint, as well Plaintiff's complaint in this lawsuit, included allegations of "harassment" directed toward Plaintiff. Plaintiff was asked in her deposition how she came to feel that she was harassed, and the examples she cited included supervisors telling her that "if you don't get it done, it's going to be a problem", supervisors asking her to make corrections to reports, and "being left out of meetings, [and] not given the support and the resources to do the job effectively." (Watson Depo., pp. 140-144.) Defendant argues, among other things, that there is no evidence that such instances were based on race or age.

{¶47} In her Response, Plaintiff did not address the subject of a hostile work environment claim, much less point to evidence that would demonstrate a genuine issue of material fact on such a claim. Looking at the deposition testimony cited by Defendant, there is no suggestion that the examples of harassment that Plaintiff identified were based upon race or age. "Harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a protected classification." *Hinkle v. L Brands, Inc. World Headquarters*, 2021-Ohio-4187, ¶ 14 (10th Dist.). Based on the uncontroverted evidence submitted by Defendant, reasonable minds can only conclude that Plaintiff cannot prevail on a hostile work environment claim under R.C. 4112.02.

**Retaliation**

{¶48} In Count III of the complaint, Plaintiff claims that she "was terminated because she had opposed discriminatory practices and she engaged in protected EEO activity." (Complaint, ¶ 22.)

{¶49} "It is unlawful for an employer to retaliate against an employee for opposing discriminatory workplace practices or for making a charge, testifying, assisting, or participating in a Title VII or R.C. Chapter 4112 investigation, proceeding, or hearing. 42 U.S.C. 2000e-3(a); R.C. 4112.02(I). "Because of the similarities between R.C. 4112.02(I) and Title VII of the Civil Rights Act of 1964, Ohio courts look to federal case law for

assistance in interpreting retaliation claims under R.C. 4112.02(I)." *Moody v. Ohio Dept. of Mental Health & Addiction Servs.*, 2021-Ohio-4578, ¶ 35 (10th Dist.).

{¶50} A plaintiff may prove a retaliation claim through either direct or circumstantial evidence that unlawful retaliation motivated the employer's adverse employment decision." *Smith*, 2013-Ohio-4210, at ¶ 47 (10th Dist.). "Direct evidence is that evidence which, if believed, requires no inferences to establish that unlawful retaliation was the reason for the employer's action." *Id.* In this case, Plaintiff relies on circumstantial evidence. (Response, p. 11.) "The *McDonnell Douglas* framework governs claims of retaliation based on circumstantial evidence." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

{¶51} To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, "a plaintiff must establish that (1) they engaged in protected activity; (2) the defending party knew the plaintiff engaged in protected activity; (3) the defending party took an adverse employment action against the plaintiff; and (4) a causal connection between the protected activity and the adverse action." *Childs v. Kroger Co.*, 2023-Ohio-2034, ¶ 99 (10th Dist.). "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

{¶52} "Once a plaintiff establishes a prima facie case, the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Veal*, 2011-Ohio-5406, at ¶17 (10th Dist.), quoting *McDonnell Douglas*, 411 U.S. at 802. "If the employer satisfies this burden, the burden shifts back to the complainant to demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.*, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

{¶53} Defendant argues that "Plaintiff cannot establish that her separation was retaliatory because she cannot demonstrate that her protected activity is causally connected to her employment separation." (Motion, p. 14.) Plaintiff, on the other hand, contends that "[t]he causal link can be established because of the very short time from her internal discrimination complaint and her OCRC Charge until her discharge." (Response, pp. 12-13.) Plaintiff argues that "in the middle of investigating [her] internal

claim of discrimination [Defendant] decided to investigate her for emailing documents to her personal email account – even though it was a common practice of [Defendant's] employees during the time of remote work – and then terminated her less than a week after learning she filed a Charge of Discrimination, again solely on the basis of the specious claim that she violated clearly established rules on safekeeping confidential documents." (Response, p. 13.)

{¶54} "To establish a causal connection, the plaintiff 'must produce "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."'" *Childs*, 2023-Ohio-2034, at ¶ 107 (10th Dist.), quoting *Smith v. Superior Prod., LLC*, 2014-Ohio-1961, ¶ 32, quoting *Gibson v. Shelly Co.*, 314 Fed.Appx. 760 (6th Cir.2008). "Whether protected activity was the but-for cause of an adverse employment action depends upon the context in which that action occurs." *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020).

{¶55} "Temporal proximity alone generally is not sufficient to establish causation." *Id.*; *see also Sells v. Holiday Mgmt. Ltd.*, 2011-Ohio-5974, ¶ 33 (10th Dist.) ("temporal proximity between protected activity and an adverse employment action is generally insufficient, without other indicia of retaliatory conduct, to establish the causation element in a retaliatory discharge claim.").

{¶56} "It is especially true that mere temporal proximity between a protected activity and an adverse employment action, without other indicia of retaliatory conduct, is generally insufficient to establish a causal connection when the evidence demonstrates intervening performance concerns." *Sells* at ¶ 35. The Sixth Circuit Court of Appeals has "held that 'an intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'" *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013), quoting *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

{¶57} It is undisputed that on October 7, 2022, Plaintiff engaged in protected activity by emailing her internal complaint to Deputy Director of Program Administration Mike Fraizer, which was investigated by Defendant's human resources department. It is also undisputed that Plaintiff engaged in protected activity by filing the charge of

discrimination with OCRC on or about November 9, 2022.  (Watson Depo., p. 248, Exhibit 16.)

{¶58} Defendant has presented uncontroverted evidence that, during the human resources investigation of the internal complaint, Plaintiff's email account was accessed to review the communications between her and those whom she accused of inappropriate conduct, and in this process it was discovered that during the week of November 14, 2022, Plaintiff sent a large number of "blind copy" emails to her personal email account, potentially transferring confidential information.  (Boothe Affidavit, ¶ 4, Exhibit A.)  This separate matter was then referred to Defendant's legal department for review, and in the resulting investigation report issued on December 12, 2022, it was confirmed that Plaintiff did, in fact, transmit Defendant's records and confidential information to her personal email account in violation of Defendant's Handbook.  (*Id.* at p. 5.)  McClellan's uncontroverted deposition testimony established that he learned the results of the legal department's investigation on December 12, 2022, and after meeting with others in senior management later that same day he recommended to Defendant's director that Plaintiff's employment be terminated.  The following day, December 13, 2022, Plaintiff resigned her employment in lieu of termination.

{¶59} Plaintiff contends that the temporal proximity between the protected activity and the termination of her employment is sufficient to demonstrate a causal connection, but "'[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case.'"  *Newton v. Ohio Dept. of Rehab. & Corr. – Toledo Corr. Inst.*, 496 Fed.Appx. 558, 567 (6th Cir. 2012), quoting *Dixon*, 481 F.3d at 335 (6th Cir. 2007); *see also Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) ("we have rarely found a retaliatory motive based only on temporal proximity").  Plaintiff points to no additional evidence beyond temporal proximity to establish a causal connection between the protected activity and the adverse action. (Response, p. 13.)

{¶60} Furthermore, Plaintiff's intervening violation of Defendant's data security policies, which occurred after her protected activity, dispels any inference of causation. *See Lisan v. Wilkie*, 835 Fed.Appx. 831, 835 (6th Cir. 2020)  ("An 'intervening legitimate reason' between the protected activity and the adverse employment action undermines

any suggestion of retaliation based on temporal proximity."); *Wasek*, 682 F.3d at 472 (6th Cir. 2012) (employee who complained about sexual harassment to his superiors, but subsequently left his worksite without authorization, had engaged in an intervening event that gave his employer a legitimate reason to discipline him); *Kuhn*, 709 F.3d at 628 (6th Cir. 2013) (employee's extended leave and failure to return to work caused a staffing shortage and constituted an intervening reason to terminate employment); *Green v. Cent. Ohio Transit Auth.*, 647 Fed.Appx. 555, 561 (6th Cir. 2016) ("Even if Hancock discovered the charges prior to the initiation of the timecard investigation, Green's falsification of her time records constitutes an intervening legitimate reason for the adverse employment action, thus dispelling any inference of retaliation based on the temporal proximity between her filing of the June OCRC and EEOC charges and her termination three months later.").

{¶61} While there is no dispute that Plaintiff transferred Defendant's records and confidential information to her personal email account in the intervening time between her internal complaint and the termination of her employment, she argues that Defendant did not learn of her OCRC charge of discrimination until December 7, 2022, six days before she was asked to resign, and after she transmitted the records and confidential information to her personal email account.  In her deposition, Susan Boothe explained that Defendant's legal department received formal notice of the charge of discrimination on December 7, 2022.  (Boothe Depo., p. 17.)  Plaintiff stated in her deposition that she had notified the chief of human resources and other officials several weeks earlier that she had filed or was in the process of filing the charge of discrimination, when they interviewed her during the human resources investigation into her internal complaint.  (Watson Depo., pp. 248-249.)  Regardless, even if it were assumed that Defendant did not know about the charge of discrimination until December 7, 2022, there is no question that Defendant's legal department was in the process of investigating her for violating Defendant's data security policies at that time, and "'[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity'").  *Tanksley v. Howell*, 2020-Ohio-4278, ¶ 46 (10th Dist.), citing *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008), quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002).

{¶62} Finally, Plaintiff asserts that that "the only reason [Defendant] learned that [Plaintiff] had forwarded documents from her work email to her personal email was because of [Plaintiff's] October 7 complaint of discrimination" and that this amounts to "but for causation". (Response, p. 7, fn. 1.) Plaintiff does not point to evidence, though, to dispute the evidence submitted by Defendant establishing how the investigation by its human resources department into the internal complaint revealed that Plaintiff had transferred Defendant's records and confidential information. The uncontroverted evidence upon which Defendant relies shows that Plaintiff's email account was accessed for an appropriate purpose, i.e. reviewing her communications with others whom she accused of discriminating against her, and in this process the "blind copy" emails that Plaintiff sent to her personal email account were discovered. Moreover, as explained earlier, the intervening nature of Plaintiff's violation of Defendant's data security policies dispels any inference of causation between Plaintiff's internal complaint and her termination, and she has not identified other evidence of causation beyond temporal proximity.

{¶63} Accordingly, reasonable minds can only conclude that Plaintiff cannot establish a causal connection between her protected activity and the termination of her employment and thus cannot establish a prima facie case of retaliation under R.C. 4112.02.

{¶64} Furthermore, for the sake of argument, even if Plaintiff were able to demonstrate a prima facie case of retaliation, as explained earlier Defendant presented a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

{¶65} "An employee may rebut the legitimate, nondiscriminatory reason offered by the employer in support of its decision to take an adverse employment action against an employee by making one or more of three showings: "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.'" *Bishop v. Ohio Dept. of Rehab. & Corr.*, 529 Fed.Appx. 685, 695 (6th Cir. 2013), quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). "Still, 'the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject the defendants'

explanation and infer that the defendants intentionally [retaliated] against him.'" *Herrera v. Churchill McGee, LLC*, 545 Fed.Appx. 499, 503 (6th Cir. 2013), quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

{¶66} Plaintiff's arguments about pretext as to both the discrimination and retaliation claims are combined in her Response to the Motion for Summary Judgment and were addressed above in the analysis of her discrimination claims. As explained earlier, evidence has not been presented to show that the proffered reason for terminating Plaintiff's employment either had no basis in fact, was not the actual reason, or was insufficient to explain Defendant's action. In short, there is no evidence from which it may be inferred that the decision to terminate Plaintiff's employment was made in retaliation for her protected activity.

{¶67} Accordingly, reasonable minds can only conclude that Plaintiff cannot show that Defendant retaliated against in her violation of R.C. 4112.02.

## Conclusion

{¶68} Based upon the foregoing, the Court concludes that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment shall be granted and judgment shall rendered in favor of Defendant.

LISA L. SADLER
Judge

[Cite as *Watson v. Ohio Dept. of Dev.*, 2025-Ohio-5877.]

YVONNE WATSON

    Plaintiff

    v.

OHIO DEPARTMENT OF
DEVELOPMENT

    Defendant

Case No. 2023-00531JD

Judge Lisa L. Sadler
Magistrate Robert Van Schoyck

<u>JUDGMENT ENTRY</u>

## IN THE COURT OF CLAIMS OF OHIO

{¶69} A non-oral hearing was conducted in this case upon Defendant's Motion for Summary Judgment. For the reasons set forth in the decision filed concurrently herewith, the Court concludes that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. As a result, Defendant's Motion for Summary Judgment is GRANTED and judgment is rendered in favor of Defendant. All previously scheduled events are VACATED. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed December 23, 2025**
**Sent to S.C. Reporter 1/6/26**